1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2

Brittany S. Scott (State Bar No. 327132)
Sean L. Litteral (State Bar No. 331985)

3

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

4

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

5

E-Mail:  ltfisher@bursor.com
              bscott@bursor.com

6

              slitteral@bursor.com

7

*Attorneys for Plaintiff*

8

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

MICHELLE THOMAS, on behalf of herself and
all others similarly situated,

12

13

Plaintiff,

v.

14

THE PROCTER & GAMBLE COMPANY,

15

Defendant.

16

17

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Michelle Thomas ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendant The Procter & Gamble Company ("P&G" or "Defendant") on information and belief, except that Plaintiff's allegations as to her own actions are based on personal knowledge.

**NATURE OF THE ACTION**

1.      This is a class action against P&G for failing to provide the number of paper towels promised to Plaintiff and other purchasers of multi-roll Bounty Select-A-Size paper towel packages. From 2018 through 2021, Defendant engaged in a uniform labeling and marketing campaign designed to convince consumers that its multi-roll Select-A-Size paper towels, including its Singles Plus Rolls and Super Rolls, amongst others (collectively, the "Products"), contain more paper towels than is the case.  Specifically, for each of the Products, customers were informed that the package was equal to a number of "Regular Rolls."  For example, P&G's Bounty Plus Select-A-Size Singles Plus is marketed as "**12 Singles Plus = 18 Regular Rolls**."  That information was set out in bold, highlighted in yellow, in the top left corner of the Product's packaging.  At the bottom of the packaging, P&G informed consumers that each Singles Plus Roll consisted of 83 sheets.  That would mean that a package of 12 Singles Plus Rolls include 996 sheets of paper towels (*i.e.* 12 rolls x 83 sheets = 996 sheets).



1
2
3



4      2.      However, P&G misstated the number of sheets consumers were getting per package.

5  P&G's website stated that Bounty's Select-A-Size Regular Rolls consisted of 63 sheets:

6
7
8
9
10
11
12
13
14
15
16
17
18
19



20
21      **Can you explain the Bounty on pack roll claims?**

22
23      A regular roll of Bounty Select-A-Size White has 63 sheets, so 63 x 8 = 504 sheets

24  ///
25  ///
26  ///
27  ///
28

3. In fact, P&G sold Regular Rolls that consisted of 63 sheet per roll:







4. Accordingly, 18 Regular Rolls equaled <u>1,134 sheets</u> (*i.e.* 18 rolls x 63 sheets = 1,134 sheets) <u>not 996 sheets</u>. That meant that consumers were getting only 87.8 percent of what they believed they were purchasing (*i.e.* 996 sheets ÷ 1,134 sheets = 87.8%). That equaled a shortage of 138 sheets or over two "Regular Rolls" of paper towels. P&G has similarly shorted customers on other multi-roll packages of Select-A-Size paper towel products during the class period.

5.     By short-changing its Select-A-Size multi-roll paper towel packages, P&G has saved millions of dollars in the cost of goods sold and was unjustly enriched by taking payment for more product than it delivers.   For these reasons, Plaintiff asserts claims on behalf of herself and a nationwide class of purchasers of P&G's Select-A-Size paper towels for (i) Breach of Express Warranty; (ii) Violation of California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*; (iii) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (iv) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (v) Fraud; (vi) Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (vii) Unjust Enrichment.

**PARTIES**

6.     Plaintiff Michelle Thomas is a resident of Crescent City, California and a citizen of the State of California.  Ms. Thomas purchased multi-roll Bounty Select-A-Size packages of paper towels multiple times during the Class Period, including in approximately the early spring of 2021 from a brick-and-mortar Walmart located Crescent City.  In purchasing the Products, Ms. Thomas reviewed information about the Product, including the quantity of paper towels purportedly contained in each package, comparing "Regular Rolls" to oversized rolls described on each package. Ms. Thomas also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by P&G that the Products contained the quantities of paper towels advertised.  Ms. Thomas relied on these representations and warranties in deciding to purchase her Products over comparable paper towels, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased P&G's multi-roll Select-A-Size packages of paper towels on the same terms if she had known that she was not, in fact, receiving the amount of paper towels she for which she bargained.

7.     Plaintiff continues to desire to purchase Bounty Select-A-Size paper towels from Defendant.  However, Plaintiff is unable to determine if the Products have the amount of paper towels advertised.  Plaintiff understands that the composition of the Product may change over time   But as long as Defendant prominently represents the amount of paper towels on the packaging, when those

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Products do not in fact contain that amount of paper towels, then when presented with false or misleading information when shopping, she will be unable to make informed decisions about whether to purchase Defendant's Product and will be unable to evaluate the different prices between Defendant's Product and competitor's Products.  Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that Products marketed, labeled, packaged, and advertised as containing a certain number of sheets, do in fact contain that number of sheets.

8.      Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business located in Cincinnati, Ohio.  P&G describes itself as "the world's largest consumer goods company[.]"  Indeed, P&G reported fiscal year 2021 net sales of $14.035 billion, an increase of nearly 10 percent versus the prior year.

9.      Whenever reference is made in this Complaint to any representation, act, omission, or transaction of P&G, that allegation shall mean that P&G did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

11.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District, Plaintiff resides within this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

///

**FACTS COMMON TO ALL CAUSES OF ACTION**

12.      P&G's false and deceptive advertising, packaging, and labeling applied to each of the Product's packages of multi-roll Select-A-Size paper towels, which are each substantially similar, consisting of a bright green base, a prominent yellow banner with bolded "Regular Roll" representations, each leading to an almost identical injury in which consumers received fewer paper towels then what they believed they were purchasing.

13.      As discussed above, P&G's Bounty Select-A-Size Singles Plus was packaged and labeled as "12 Rolls = 18 Regular Rolls." That information was set out in bold, highlighted in yellow, and occupied a significant percentage of the Product's packaging. At the bottom of the packaging, P&G informed consumers that each Singles Plus Roll consists of 83 sheets. That would mean that a package of 12 Singles Plus Rolls equaled 996 sheets (*i.e.* 12 rolls x 83 sheets = 996 sheets).

14.      As P&G admitted on its website, however, a Regular Roll consisted of 63 sheets during the class period. Thus, 18 Regular Rolls included 1,134 sheets (*i.e.* 18 rolls x 63 sheets = 1,134 sheets). That meant that consumers were getting only 87.8 percent of what they believed they were purchasing (*i.e.* 996 sheets ÷ 1,134 sheets = 87.8%). That equaled a shortage of 138 sheets or over two "Regular Rolls" of paper towels.

15.      Similarly, during the class period, P&G manufactured and sold Bounty Select-A-Size Super Rolls package that was labeled as "12 Rolls = 22 Regular Rolls." That information was set out in bold, highlighted in yellow, and occupied a significant percentage of the Product's packaging. At the bottom of the packaging, P&G informed consumers that each Singles Plus Roll consists of 101 sheets. That would mean that a package of 12 Bounty Select-A-Size Super Rolls equaled 1,212 sheets (*i.e.* 12 rolls x 101 sheets = 1,212 sheets).

///

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15





16. As P&G admitted on its website, however, a Regular Roll consisted of 63 sheets during the class period. Thus, 22 Regular Rolls included 1,386 sheets (*i.e.* 22 rolls x 63 sheets = 1,386 sheets). That meant that consumers were getting only 87.4 percent of what they believed they were purchasing (*i.e.* 1,212 sheets ÷ 1,386 sheets = 87.4%). That equaled a shortage of 138 sheets or over two "Regular Rolls" of paper towels. P&G has also shorted customers on other similar Select-A-Size paper towel packages during the class period.

<u>**CLASS ACTION ALLEGATIONS**</u>

17. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class") from 2018 through 2021. Excluded from the Class are persons who made such purchases for purpose of resale. Plaintiff reserves the right amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

18.     Plaintiff also seek to represent a Subclass of all Class Members who purchased the Products in California (the "Subclass").

19.     At this time, Plaintiff does not know the exact number of members of the Class; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

20.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual Class members include:

    a.  whether Defendant has shortchanged the number of paper towels in the Products;

    b.  whether Defendant warranted that the Products contained a specific measurement for each size;

    c.  whether Defendant breached these warranties;

    d.  whether Defendant committed statutory and common law fraud by doing so;

    e.  whether Defendant's conduct was unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

    f.  whether Defendant's conduct was unfair and/or deceptive;

    g.  whether Defendant was unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class members;

    h.  whether Plaintiff and the Class members sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

21.     Plaintiff's claims are typical of those of the Class members because Plaintiff, like other Class members, purchased, in a typical consumer setting, the Products and Plaintiff sustained damages from Defendant's wrongful conduct.

///

22.     Plaintiff will fairly and adequately protect the interests of the Class members and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class or the Subclass.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

24.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making appropriate equitable relief with respect to the Class and the Subclass as a whole.

25.     The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class members are not parties to such actions.

## CAUSES OF ACTION

### FIRST COUNT
**Breach of Express Warranty**

26.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

27.     Plaintiff brings this claim individually and on behalf of the Class and Subclass members.

28.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contained a certain number of sheets of paper towels when they did not.  For instance, Defendant asserted that 12 Singles Plus Rolls equaled 18 Regular Rolls when in fact they were short 138 sheets or two "Regular Rolls" of paper towels.

29.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class and Subclass members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if the true facts were known concerning the Products' quantity; and (b) the Products did not have the characteristics, uses, benefits, or quantities as promised.

30.     Plaintiff and the Class and Subclass members are entitled to equitable relief, restitution, and an order for the disgorgement of funds by which Defendant was unjustly enriched.

31.     Plaintiff's counsel sent Defendant a letter apprising Defendant of its breach of warranties on or about July 21, 2021.  Defendant failed to adequately address Plaintiff's concerns. This suit follows.

**SECOND COUNT**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code §§ 1750,** *et seq.*

32.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

33.     Plaintiff brings this claim individually and on behalf of the Subclass members.

34.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection where he or she does not have."

35.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

36.     Defendant violated this provision by misrepresenting that the Products contained a certain number of sheets of paper towels when they did not.

37.     Plaintiff and the Subclass members suffered injuries caused by Defendant because: (a) they would not have purchased the Products on the same terms if the true facts were known concerning the Products' quantity; and (b) Defendant's Products did not have the characteristics, uses, benefits, or quantities as promised.

38.     On or about July 21, 2021, prior to filing this action, a CLRA notice letter was served on Defendant which complies with California Civil Code § 1782(a).  Plaintiff's counsel sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by

refunding the monies received therefrom.  This letter was sent on behalf of "all similarly situated purchasers of Bounty Select-A-Size Paper Towels."

39.    Wherefore, Plaintiff seeks damages and restitution for this violation of the CLRA.

### THIRD COUNT
**Violation Of California's Unfair Competition Law,**
**California Business & Professions Code §§ 17200, *et seq*.**

40.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

41.    Plaintiff brings this claim individually and on behalf of the Subclass against Defendant.

42.    Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

43.    Defendant's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; California's False Advertising Law as described herein; and Cal. Com. Code § 2607.

44.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

45.    Defendant violated the "fraudulent" prong of the UCL by making misrepresentations about the Products, as described herein.

46.    Plaintiff and the Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased Defendant's Products on the same terms if the true facts were known concerning the Products' quantities; and (b) Defendant's Products did not have the characteristics, uses, benefits, or quantities as promised.

47.     As a result of Defendant's conduct, Plaintiff seeks restitution and disgorgement under California Business & Professions Code §17203.

**FOURTH COUNT**
**Violation of California's False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq*.**

48.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

49.     Plaintiff brings this claim individually and on behalf of the Subclass against Defendant.

50.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or causes to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other matter or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

51.     Defendant committed acts of false advertising, as defined by § 17500, by misrepresenting that the Products contained a certain number of sheets of paper towels when they did not.

52.     Defendant knew or should have known, through the exercise of reasonable care that its representations about the Products were untrue and misleading.

53.     Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

54.     Plaintiff and the Subclass members lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased Defendant's Products on the same terms if the true facts were known concerning the Products' quantities; and (b) Defendant's Products did not have the characteristics, uses, benefits, or quantities as promised.

55.     Accordingly, Plaintiff and the Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of profits stemming from Defendant's unfair, unlawful,

and fraudulent business practices; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate and equitable relief.

## FIFTH COUNT
### Fraud

56.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

57.     Plaintiff brings this claim individually on behalf of the Class and Subclass members against Defendant.

58.     As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the Products including misrepresenting that the Products contained a certain number of sheets of paper towels when they did not.

59.     The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class and Subclass members to purchase the Products.

60.     The fraudulent actions of Defendant caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## SIXTH COUNT
### Violation of the Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, *et seq.*

61.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

62.     Plaintiff brings this claim individually and on behalf of the Class and Subclass members against Defendant.

63.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

64.     Plaintiff and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

65.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

66.     Defendant expressly warranted that its "Regular Rolls" contained 63 sheets per Regular Roll.

67.     In fact, Defendant's Products are not fit for such purposes because this express warranty is false.  The Products are significantly short-changed.

68.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class and Subclass members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if the true facts were known concerning the Products' quantity; and (b) the Products did not have the characteristics, uses, benefits, or quantities as promised.

69.     By reason of Defendant's breach of express warranty, Defendant violated the statutory rights due to Plaintiff and the Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and the Class and Subclass members.

70.     Plaintiff and the Class and Subclass members were injured as a direct and proximate result of Defendant's breaches because they would not have purchased the Products or would not have purchased the Products on the same terms if they true facts had been known.

71.     Plaintiff and the Class and Subclass members are entitled to equitable relief, restitution, and an order for the disgorgement of funds by which Defendant was unjustly enriched.

72.     Plaintiff's counsel sent Defendant a letter apprising Defendant of its breach of warranties on or about July 21, 2021.  Defendant failed to adequately address Plaintiff's concerns. This suit follows.

## SEVENTH COUNT
### Unjust Enrichment

73.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

74.     Plaintiff brings this claim in the alternative to her claims at law, individually and on behalf of the Class and Subclass members against Defendant.

75.     As a result of Defendant's unlawful and misleading labeling, marketing, and sale of the Products, Defendant was enriched at the expense of Plaintiff and the Class and Subclass.

76.     Defendant sold Products that were not as advertised.

77.     Plaintiff and the Class and Subclass members paid a price premium for the Products.

78.     Thus, it is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and the Class and Subclass members given that the Products were not as Defendant purported them to be.

79.     It would be unjust and inequitable for Defendant to retain the benefit, warranting restitutionary disgorgement to Plaintiff and Class and Subclass members of the monies paid for the Products.

80.     As a direct and proximate result of Defendant's actions, Plaintiff and Class members have suffered in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed classes the following relief against Defendant:

a.  That the Court certify the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and her attorneys as Class Counsel to represent the members of the Class and Subclass;

b.  That the Court declare that Defendant's conduct violates the statutes referenced herein;

c.  That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

d.  That the Court order Defendant to notify each and every individual and/or business who purchased the Products of the pendency of the claims in this action to give such individuals and businesses an opportunity to obtain restitution from Defendant;

e.  That the Court grant Plaintiff's reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure §1021.5, California Civil Code §1780(d), the common fund doctrine, and/or any other appropriate legal theory; and

f.   That the Court grant such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated: April 8, 2022                                  Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   <u>   /s/ L. Timothy Fisher         </u>
              L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
              bscott@bursor.com
              slitteral@bursor.com

*Attorneys for Plaintiff*

1

2

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Michelle Thomas in this action.  Ms. Thomas is a resident of Crescent City, California.   I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 8th day of April 2022.


            */s/ L. Timothy Fisher*
              L. Timothy Fisher